McPHEE & McGINTY, APPELLANTS, v. Z. L. KAY, APPELLEE.

[FILED JULY 2, 1890.]

1. **Mechanics' Liens:** FAILURE TO FILE ACCOUNT. In proceedings to enforce a mechanic's lien by plaintiffs, as subcontractors, for material furnished to the contractor without authority of defendant, as the owner, no account of which under oath was made and filed with the register of deeds, under sec. 3, art. 2, of chap. 54, Comp. Stats., within sixty days after furnishing the material, *held*, not good.

2. ————: DISCHARGE: THE EVIDENCE examined, and *held*, sufficient to sustain the judgment below· discharging the lien.

APPEAL from the district court for Red Willow county. Heard below before COCHRAN J.

*Hugh W. Cole,* for appellants.

*W. S. Morlan, contra.*

COBB, CH. J.

This action was brought in the district court of Red Willow county by McPhee & McGinty, plaintiffs, against Z. L. Kay, defendant. The cause of action, as set out in the petition, is, that on or about the 18th day of October, 1886, the plaintiffs entered into an oral contract with the defendant, by and through the defendant's agent, William

Lang, to furnish the defendant certain building and finishing material, therein particularly set out and described, at the agreed price of $195, for and in the construction of a dwelling house on lots 7 and 8, in block 2, in the original town of McCook, Red Willow county, in this state.

2. That in pursuance of said contract the plaintiffs furnished said material to the defendant for the erection of said house on the 18th day of October, 1886, for the said sum of $195.

3. That the defendant, at the time when, etc., was the owner of said lots 7 and 8 by virtue of a contract of purchase, etc.

4. That on the 1st day of February, 1887, and within four months of the time of furnishing said material, the plaintiffs made an account in writing, of the items of such material furnished defendant under said contract, and, after making oath thereto as required by law, filed the same in the office of the clerk of Red Willow county, Nebraska, on the 7th day of February, 1887, and within four months of the time of furnishing said materials, claiming a mechanic's lien therefor upon said lots and the building thereon.

5. That the sum of $195 and interest from the 18th day of October, 1886, now remains due and unpaid on said account, with prayer for a judgment for said sum and interest, together with costs of suit, and that said premises may be sold and the proceeds of such sale applied to the payment of such judgment, interest, and costs, and for general relief.

The answer of the defendant consisted of a general denial.

There was a trial to the court, a jury being waived, with a finding and judgment for the defendant.

The plaintiff's motion for a new trial was overruled and the cause brought to this court on appeal by the plaintiffs.

It appears from the evidence, as contained in the bill of

exceptions, that the plaintiffs reside in the city of Denver, Colorado, and were dealers in lumber and manufacturers and dealers in building material; the defendant resides at McCook, Red Willow county, in this state; also, that William Lang resides at Denver and is an architect. It further appears that in the summer and fall of 1886 the defendant erected a dwelling house at McCook; that preparatory to building, he, through correspondence, employed said William Lang as an architect to draw an elevation and prepare a plan and specifications of his said building; that pursuant to such employment Lang drew such elevation and prepared such plans and specifications, which were sent to defendant, at McCook, for his inspection, and finally approved and paid for by him. It also appears that the defendant employed and entered into a contract with one John F. Collins, of McCook, a carpenter and contractor, to furnish all materials and construct the said house complete, according to the plans and specifications furnished by the said architect. Collins entered upon the construction of the house, and pursued it to some state of completion, but to what extent does not appear, when he abandoned it, and the defendant purchased some materials for its completion and finished it himself. This appears from the testimony of the defendant, and, although he was cross-examined by plaintiffs' counsel, he was not examined, nor did he state, nor does it otherwise appear, what material he purchased, nor of whom. I quote his entire cross-examination:

Q. This woodwork and materials furnished went into the building, didn't they?

A. I suppose they did.

It also appears that the defendant overpaid Collins, the contractor, for the material furnished and work done by him, to a considerable amount.

The deposition of William Lang, the architect above referred to, taken at Denver, was offered by the plaintiff,

and read on the trial.    After stating his residence and business, he stated that he was acquainted with the plaintiffs, and also acquainted with the defendant through correspondence with him.    I quote:

Q. Have you had any business transactions in the past three years with the defendant, and, if so, what was the nature of that transaction?

A. I have; he employed me to make plans for a dwelling house he was building in McCook, Nebraska.

Q. Who hired you and paid you for your services in that transaction?

A. Z. L. Kay, the defendant in this case.

Q. During the time of that transacting of said business did you have any dealings with the plaintiffs with respect to the same, and, if so, state what you did in that regard and for whom?

A. I did; the defendant in this case wrote me requesting that I should get him prices on certain woodwork to be u-ed in the construction of his house, such as glass, brackets for gables, porches, etc.    I submitted the list sent me to Billings & Stewart and plaintiffs in this case, and received bids from them, which I sent to the defendant. Shortly after that—probably a week or ten days—I received a letter from them, saying, we want you to ship us those goods.    I went to Mr. McPhee, who refused to ship the goods to Collins, but did ship them to Dr. Kay, the defendant, upon the strength of the letter which I had received from Kay, showing my authority to act in the premises.

Q. I will ask you whether or not these are the letters referred to?    (Showing witness two letters.)

A. Yes, sir; except the Collins letter, which I cannot find.

Q. Did you receive these letters during the time referred to?

A. Yes, sir.

(Letters attached to deposition, marked Exhibits A and B.)

Q. Did you, at any time during the transaction before referred to, act or pretend to represent any other person than the defendant in respect thereto?

A. I did not.

Q. What, if any, instructions were given to McPhee & McGinty by you, referring to the shipping of the material so ordered by you?

A. I ordered them to ship the goods to Dr. Z. L. Kay, in care of John Collins.

The first of the above letters is dated McCook, Neb., August 14, 1886, and is entirely devoted to the sketch of the building which Lang had sent to Kay and certain proposed changes therein. The date of the second letter is torn off. It is also chiefly devoted to proposed changes in the plan, but closes with the following paragraph: "I expect I shall ask you to assist me in getting mantel, stained glass, brackets for gable, porch railing, etc.

The deposition of Charles D. McPhee, also taken at Denver, was offered in evidence by the plaintiffs and read at the trial. He stated that he was one of the plaintiffs and was not acquainted with the defendant. In answer to a question by plaintiffs' counsel he stated: " We were requested to make an estimate on a bill of materials by one William Lang, an architect, for a house that the defendant was building in McCook, Neb. We made the estimate and gave it to Mr. Lang, who said he was transacting this business for the defendant as his architect. In the course of eight or ten days Lang came back and wanted us to go on with the work as we were the lowest bidders; at the same time he showed us letters from Dr. Kay, the defendant, authorizing him to procure this material, and at the same time representing to me that Dr. Kay was a man of means and that he would pay the bill. That, upon the strength of such representations and the letters, they pre-

pared all the material according to the plans and details given us by said Lang, and on the completion of the work Mr. Lang examined the work and ordered the same shipped to Dr. Z. L. Kay, in care of John Collins at McCook, Nebraska, and at the same time ordered us to send a detailed statement of the items of the account to Dr. Kay, the defendant, which we did." He also stated that the letters referred to as having been shown to him by Mr. Lang are the same letters which are attached to his deposition in this case and marked Exhibits A and B ; that said material was charged to Z. L. Kay, as appears from plaintiffs' books ; that the contract price of said goods was one hundred and ninety-five dollars; that they had never received said amount, or any part thereof, from the defendant or from any other person in payment for the same ; that they had sent monthly statements of said account to Z. L. Kay, McCook, Neb.; that the reason why the said goods were shipped in care of J. F. Collins was that Mr. Lang instructed them to ship in that way for the reason that the defendant was out of town a good deal of the time and he wanted his builders to be able to receipt for goods and to receive the same in case of the defendant's absence; and that plaintiffs never, directly nor indirectly, had any contract, agreement, or understanding with said Collins with reference to said transaction.

H. W. Cole was sworn as a witness for the plaintiff upon the trial and testified that he received the claim sued on from the plaintiffs for presentation to the defendant; that he presented it to Dr. Kay, "and he said these lumber and materials went into the house and should be paid by Collins. He said that he was not to pay for the lumber," etc.

A copy of a lien, as filed in the office of the county clerk, appears in the bill of exceptions. It appears by the writing on the face, over the signature of C. D. McPhee, to have been filed February 1, 1887, but it does not officially appear when it was filed.

It is the theory of the plaintiffs' case that the building material, for which their lien was filed and the action brought, was furnished directly to the defendant, and not to the contractor, nor through him. Indeed, their case ignores the existence of a contractor for furnishing the material and erecting the house. Had it been sought to establish a lien upon the house for material furnished for its construction through a contractor, the sworn statement of the material furnished by the plaintiff and the amount due them therefor from the contractor, must have been presented and filed in the office of the register of deeds of the county within sixty days from the date of the furnishing of the same. It is not claimed that such statement was presented or filed in this case until long subsequent to the expiration of that period.

As hereinbefore stated, the defendant employed and contracted with John F. Collins to furnish all material and to build the house, and it is apparent from the testimony on the part of the plaintiffs that, at the time of furnishing the material, this contractor was engaged in the erection of the house, so that the independent fact, if the same is proven or admitted, that the material furnished by the plaintiffs entered into the construction of the house, does not, of itself, establish the right of the plaintiffs to a lien upon the building or to a recovery against the defendant. Nevertheless, were it proved that the defendant ordered the material, and that it was delivered to him, or by his direction to the contractor, he would be liable, and this is what was evidently the intention and the efforts of the plaintiffs to prove. It is not claimed that he did this personally or directly, but that he did it through William Lang, the architect.

To establish the authority of Lang to order this material, two letters written by defendant are given in evidence, but these letters fall far short of establishing such authority, and the only clause in either of them which refers in a re-

mote degree to any material for the construction or finishing of the building is that hereinbefore quoted, in which the defendant says : " I expect I shall ask you to assist me in getting mantel, stained glass, bracket for gable, porch railing," etc. It need scarcely be said that these words fall far short of evidencing an agency on the part of Lang to contract for the plaintiff in the purchase of the articles therein named, to say nothing of the articles for which the lien is filed.

The witness Lang mentioned another letter which he says had been lost, but its loss was not established so as to admit of its contents being proved as evidence to the jury, and indeed there is no attempt to prove its contents ; nor indeed does it appear that such letter was written by the defendant. In one instance the witness speaks of this lost letter as " the Collins letter." From the entire evidence it is apparent that the letter referred to as lost was written by Collins, and that upon his suggestion the material was purchased and shipped to McCook in such a way that he could receive it without the knowledge of defendant, and work it into the building as material furnished by him.

It appears as well from the testimony of Lang as of the plaintiff McPhee, and a copy of the bill of lading which was introduced in evidence and attached to the bill of exceptions, that the material was shipped to Z. L. Kay in the care of J. F. Collins, and this, according to the testimony of Lang, was that inasmuch as the defendant was absent from home a great portion of the time it was desirable that Collins could receive the material from the railroad company in his absence. There is therefore a failure to prove the furnishing of said material to defendant or that it entered into the construction of his building in such manner as to hold him chargeable to the plaintiffs therefor or to entitle the plaintiffs to a lien upon the building.

The judgment of the district court is

AFFIRMED.

THE other judges concur.